No. 25-1611

# UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

AMERICAN PUBLIC HEALTH ASSOCIATION et al.,

*Plaintiffs-Appellees,*

v.

NATIONAL INSTITUTES OF HEALTH et al.,

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

**APHA PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR STAY PENDING APPEAL**

<u>TABLE OF CONTENTS</u>

<u>PAGE NO.</u>

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ...............................................................................................1

BACKGROUND ................................................................................................3

ARGUMENT .....................................................................................................5

    I.     Defendants are not likely to succeed on the merits..............................6

         A.    The Tucker Act does not divest the District Court of jurisdiction. ..................................................................6

             i.     Defendants misinterpret the relevant law. ........................7

             ii.    Defendants mischaracterize and ignore key facts. ...........9

         B.    The Directives and resulting grant terminations are not committed to agency discretion. ................................................14

         C.    The Directives and resulting grant terminations were neither reasonable nor reasonably explained. ...........................17

    II.    The balance of equities does not support a stay of the Judgment. ......19

CONCLUSION ................................................................................................22

## TABLE OF AUTHORITIES

**Cases**

*Abbott Laboratories v. Gardner*,
    387 U.S. 136 (1967).........................................................................6

*AIDS Vaccine Advoc. Coal. v U.S. Dep't of State*,
    No. 25-cv-402, 2025 WL 752378 (D.D.C. Mar. 10, 2025)..........................22

*Bowen v. Massachusetts*,
    487 U.S. 879 n.46 (1988) ................................................. 6, 8, 9, 10

*Califano v. Sanders*,
    430 U.S. 99 (1977)........................................................................11

*California v. United States Dep't of Educ.*,
    769 F.Supp.3d 72 (D. Mass. 2025)..................................... 8, 14, 15

*Cienega Gardens v. United States*,
    194 F.3d 1231 (Fed. Cir. 1998) ....................................................13

*Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*,
    137 F.4th 932 (9th Cir. 2025) ................................................. 10, 13

*Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*,
    38 F.4th 1099 (D.C. Cir. 2022)......................................................10

*Dep't of Educ. v. Louisiana*,
    603 U.S. 866 (2024)........................................................................5

*Department of Education v. California*,
    145 S. Ct. 966 (2025)........................................................... passim

*Dep't of Commerce v. New York*,
    588 U.S. 752 (2019)......................................................... 14, 15, 16

*Does 1-3 v. Mills*,
    39 F.4th 20 (1st Cir. 2022) ............................................................5

*Ferreiro v. United States*,
    501 F.3d 1349 (Fed. Cir. 2007) ....................................................10

*Great-West Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002)........................................................................9

*Lincoln v. Vigil*,
    508 U.S. 182 (1993)......................................................................16

*Lunding v. N.Y. Tax Appeals Tribunal*,
    522 U.S. 287 (1998)........................................................................7

*Marasco & Nesselbush, LLP v. Collins*,
    6 F.4th 150 (1st Cir. 2021) ...........................................................14

*Merrill v. Milligan*,
    142 S.Ct. 879 (2022)......................................................................7

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983)........................................................................17

*Nken v. Holder*,
    556 U.S. 418 (2009)..................................................................6, 19

*Ohio v. EPA*,
    603 U.S. 279 (2024)......................................................................17

*Policy & Research, LLC v. United States Dep't of Health & Human Services*,
    313 F. Supp. 3d 62 (D.D.C. 2018)................................................16

*Ransom v. United States*,
    900 F.2d 242 (Fed. Cir. 1990) ......................................................13

*Rhode Island v. Trump*,
    No. 25-CV-128, 2025 WL 1303868 (D. R.I. May 6, 2025)..........11

*Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*,
    102 F.3d 12 (1st Cir. 1996)...........................................................21

*Shawnee Tribe v. Mnuchin*,
    984 F.3d 94 (D.C. Cir. 2021)........................................................16

*Somerville Pub. Sch. v. McMahon*,
    139 F.4th 63 (1st Cir. 2025) ...................................... 19, 20, 21, 22

*Tootle v. Sec'y of Navy*,
    446 F.3d 167 (D.C. Cir. 2006)......................................................................13

*Union of Concerned Scientists v. Wheeler*,
    954 F.3d 11 (1st Cir. 2020).................................................................. 15, 16

*Vaqueria Tres Monjitas, Inc. v. Irizarry*,
    587 F.3d 464 (1st Cir. 2009)........................................................................21

**Statutes**

42 U.S.C § 283 ............................................................................................15

42 U.S.C. § 288 ..................................................................................... 12, 15

42 U.S.C. § 289 ............................................................................................12

42 U.S.C. §§ 241 ..........................................................................................12

42 U.S.C. §§ 282 ..........................................................................................15

42 U.S.C. §§ 285 ..................................................................................... 15, 16

5 U.S.C. § 706 ................................................................................................1

**Rules**

45 C.F.R. § 75.2 ..........................................................................................12

45 C.F.R. § 75.372 ......................................................................................16

FRCP 54 ........................................................................................................5

iv

## INTRODUCTION

Defendants have not demonstrated that the extraordinary remedy of a stay is warranted. Defendants' primary argument is that the District Court lacked jurisdiction to enforce what it describes as a contractual obligation to pay money under the Supreme Court's *per curiam* opinion in *Department of Education v. California*, 145 S. Ct. 966 (2025) (per curiam) ("*California*"). But this misconstrues the Judgment in this case, and ignores that the source of Plaintiffs' rights, and the scope of the relief requested and obtained, are dispositively different from what was at issue in *California*, which is already of limited weight given its procedural posture.

Specifically, the District Court's Judgment in this case orders:

> (1) "the [] Directives … are declared … arbitrary and capricious, and unlawful, in violation of 5 U.S.C. § 706(2)(a);

> (2) "the Directives ... are [] of no effect, void, illegal, set aside, and vacated";

> (3) [t]he Resulting Grant Terminations pursuant to the Directives are declared to be unlawful"; and

> (4) "the Resulting Grant Terminations are… of no effect, void, illegal, set aside, and vacated."

App. 350 (emphasis removed). At no point does the Judgment order Defendants to "specific[ally] perform[]" any alleged contractual obligations, *contra* Defendants' Motion to Stay at 16, 21 ("Mot."), and for good reason. Plaintiffs' claims are an APA

1

challenge to Defendants' authority to enact, without reasoned or reasonable explanation, written policies banning certain categories of research ('the Directives") and to implement the same. The heart of the requested relief was a set aside of the Directives and the resulting terminations. Defendants' argument on the Tucker Act therefore falls flat.

The District Court also correctly found that the Directives and the resulting grant terminations are not actions committed to agency discretion. Additionally, given the lack of any reasoned or reasonable analysis, the District Court rightfully concluded that both the Directives and resulting terminations were arbitrary and capricious.

Finally, the balance of the equities counsels strongly against a stay in this case. Defendants have not submitted any evidence that they would be irreparably harmed absent a stay. Even if this Court were to credit Defendants' conclusory assertions, any alleged harm is nominal in the face of the cascading harm to the public interest and to the Plaintiffs and the associational Plaintiffs' members ("Members") that would result from the continued cessation of critical biomedical research. Indeed, unlike in *California*, Plaintiffs and Members lack the "financial wherewithal" to keep that research going. 145 S. Ct. at 969. An expedited appeal is appropriate here given the critical need to restore stability to the biomedical research field; a stay is not.

## BACKGROUND

In early 2025, the Department of Health and Human Services ("HHS") and the National Institutes of Health ("NIH")—"the primary source of federal funding for biomedical research in the United States, and … the largest public funder of biomedical research in the world" App. 427—decided on a policy to cease funding research related to an ever-expanding list of amorphous concepts that they claimed "no longer effectuate[] agency priorities." App. 414. To execute this decision, NIH issued Directives[1] that resulted in the termination of billions of dollars in scientific research support for grants and granting programs, and the removal of previously published funding opportunities and applications submitted for those opportunities. *See* App. 429-91. The record demonstrates the Directives set forth the categories of newly forbidden research and programs without any definition of what belongs in those categories, *see* App. 437, provide only boilerplate and conclusory justifications for why these categories are forbidden, *see* App. 462-63, and point to no research, data, or any other support to justify their about-face from prior NIH priorities and determinations, *see* App. 476.

The terminations resulting from the Directives have caused widespread and ever-compounding harm. Plaintiffs and Members rely on NIH funding and have had their livelihoods upended and their research jeopardized. *See, e.g.*, APHA App. 107,

---

[1] *See* App. 349-50 for a list of the challenged Directives.

108, 168. Critically, Plaintiffs' and Members' research addressing prominent public health issues has been undermined, destabilized, and potentially destroyed. *See, e.g.*, APHA App. 229-31, 466, 551, 785-86.

Plaintiffs filed this action challenging the Directives, and the resulting grant terminations and delays in reviewing grant applications, under the Administrative Procedure Act ("APA") and U.S. Constitution. *See* App. 90-167. Plaintiffs filed a motion for preliminary injunction, App. 289, which the District Court "into a trial on the merits," construing Defendants' opposition to the preliminary injunction as a motion to dismiss (the "MTD Order"). App. 290. The MTD Order allowed most of the APA claims to proceed but dismissed two constitutional claims. *See* App. 288-331.

The MTD Order also rejected Defendants' argument that the court lacked subject matter jurisdiction under the Tucker Act, adopting the reasoning from its May 12, 2025, holding that it had subject matter jurisdiction over the related case, *Massachusetts v. Kennedy,* No. 25 Civ. 10814, 2025 WL 1371785, at *5 (D. Mass. May 12, 2025). *See* App. 301-02. The court found that the claims in both cases differ from those addressed in *California*. App. 275.

The District Court then held a consolidated bench trial for "Phase 1" of both cases on June 16, 2025 addressing Plaintiffs' APA claims challenging the Directives and resulting grant terminations. At the conclusion of the trial, it issued an oral order

that the Directives and resulting grant terminations are "arbitrary and capricious," "void," and "illegal." App. 338-39.

On June 23, 2025, the court issued a partial final judgment under FRCP 54(b) declaring the Directives and resulting grant terminations are "of no effect, void, illegal, set aside, and vacated" under the APA (the "Judgment"). App. 348-50. The next day, the court denied Defendants' motion for a stay of the Judgment. App. 359-64. On July 2, 2025, the court issued findings of fact and rulings of law supporting the Judgment on Phase 1 and explaining why, *inter alia*, the Directives and resulting grant terminations are arbitrary and capricious and not in accordance with law. App. 416-518. Defendants subsequently filed the instant motion.

## ARGUMENT

A stay pending appeal is appropriate only if "the stay applicant has made a strong showing" that (1) its appeal will "likely … succeed on the merits"; (2) it "will be irreparably injured absent a stay"; (3) "issuance of the stay will [not] substantially injure the other parties"; and (4) the stay would be in "the public interest." *Does 1-3 v. Mills*, 39 F.4th 20, 24 (1st Cir. 2022). "[T]he burden is on the … applicant to show" these factors "favor a stay." *Dep't of Educ. v. Louisiana*, 603 U.S. 866, 868 (2024). "It is not enough that the chance of success on the merits be better than negligible," and "simply showing some possibility of irreparable injury fails to satisfy the second factor." *Does 1-3*, 39 F.4th at 25 (alteration in original) (quoting

*Nken v. Holder*, 556 U.S. 418, 434–35 (2009)). A stay "is not a matter of right, even if irreparable injury might otherwise result to [Defendants]." *Nken,* 556 U.S. at 427 (cleaned up).

## I.    DEFENDANTS ARE NOT LIKELY TO SUCCEED ON THE MERITS.

### A.    The Tucker Act does not divest the District Court of jurisdiction.

The bulk of Defendants' merits argument is that this case, which sought and obtained a final judgment under the APA vacating and setting aside the Directives and resulting grant terminations, "should have been consigned to the Court of Federal Claims [("CFC")]," Mot. at 1, a court of "limited jurisdiction" with no equitable powers. *Bowen v. Massachusetts*, 487 U.S. 879, 908, n.46 (1988). To advance this argument, Defendants ignore the record and disregard over 50 years of Supreme Court precedent counseling that "[the APA] manifests a congressional intention that it cover a broad spectrum of administrative actions[] and [its] 'generous review provisions' must be given a 'hospitable' interpretation.'" *Bowen*, 497 U.S. at 904 (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140-141 (1967)).

Defendants' arguments are unavailing. First, Defendants misinterpret the relevant law, overreading the Supreme Court's *per curiam* opinion in *California* and failing to apply the controlling Supreme Court precedent articulated in *Bowen*. Second, Defendants mischaracterize and ignore key facts in a failed attempt to

6

shoehorn this case into *California*. But neither the source of Plaintiffs' rights nor their requested relief suggest this is, "in essence," a contract case which belongs before the CFC. To the contrary, Plaintiffs sought and obtained policy-level, APA-relief from the Directives and resulting terminations that included prospective remedies and did not concern contracts. Any one of these facts dispositively distinguish this case from *California* and make clear that the District Court properly exercised its jurisdiction.

### i. Defendants misinterpret the relevant law.

Defendants' failure to acknowledge the distinct procedural posture, factual background and legal theories, in *California* leads to a fatal overreading of the opinion, which, in actuality, is far too narrow to support their argument for a stay.

As a *per curiam* opinion issued on the Court's emergency docket, *California* lacks full precedential value. *See Lunding v. N.Y. Tax Appeals Tribunal*, 522 U.S. 287, 289 (1998) (noting summary actions "do not have the same precedential value as do opinions of the Court after briefing and oral argument"); *see also Merrill v. Milligan*, 142 S.Ct. 879, 879 (2022) (Kavanaugh, J., concurring) (noting "the Court's stay order is not a decision on the merits"); *id*. at 883 (Roberts, C.J., dissenting) ("[A] change [in precedent] can properly happen only after full briefing and argument—not based on the scanty review this Court gives matters on its shadow docket.").

*California*'s facts further highlight its cabined reach. *California* involved a temporary restraining order of the termination of grant programs which relied on the terms and conditions of the plaintiffs' grant agreements as one basis for their claims. *See California v. United States Dep't of Educ.*, 769 F.Supp.3d 72, 79-80 (D. Mass. 2025). Defendants' suggestion that *California* stands for the proposition that all cases involving federal grants belong before the CFC— regardless of the theory advanced and the relief sought—is incorrect. As the Court in *California* acknowledged, the Tucker Act does not bar APA claims simply because there may be monetary consequences to equitable relief. *See* 145 S. Ct. at 968 (quoting *Bowen*, 487 U. S. at 910) ("[A] district court's jurisdiction 'is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds.").

Indeed, *Bowen*—cited favorably by all of the opinions in *California*, yet notably absent from Defendants' Motion—remains the controlling case on these issues. *See California,* 145 S. Ct. at 968; *id.* at 969 (Kagan, J., dissenting); *id.* at 978 n.7 (Jackson, J., dissenting). *Bowen* involved an APA challenge to a determination disallowing reimbursement of certain expenses under Medicaid. The district court reversed that determination, obligating the federal government to disburse funds. The Supreme Court nevertheless found that *Bowen* did *not* belong in the CFC, holding that "declaratory and injunctive relief" was warranted, and that it was "not

8

willing to assume, categorically, that a naked money judgment against the United States will always be an adequate substitute" for such relief. *Bowen*, 487 U.S. at 905. In so doing, *Bowen* explained that Congress did not intend the exceptions to the APA's waiver of sovereign immunity to "defeat the central purpose of providing a broad spectrum of judicial review of agency action," but merely to avoid duplication of existing judicial remedies created by statute. *Id.* at 903.

As the Supreme Court has continued to articulate, *Bowen* makes clear that where a plaintiff seeks forward-looking relief from ongoing agency actions, a court is not jurisdictionally barred from hearing such claims, particularly in situations where plaintiffs seek equitable relief beyond the powers of the CFC:

> [In *Bowen*,] Massachusetts claimed not only that the Federal Government failed to reimburse it for past expenses pursuant to a statutory obligation, but that the method the Federal Government used to calculate reimbursements would lead to underpayments in the future. Thus, the suit was not merely for past due sums, but for an injunction to correct the method of calculating payments going forward.

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002) (citing *Bowen*, 487 U.S. 879).

### ii.    Defendants mischaracterize and ignore key facts.

Applying the correct law to the actual facts demonstrates that the District Court properly held there is jurisdiction here. Whether an action is subject to the Tucker Act depends on the "type of relief sought" and the "source of the right" being vindicated. *See Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099,

1106 (D.C. Cir. 2022) (citation omitted). "If rights and remedies are statutorily or constitutionally based, then district courts have jurisdiction; if rights and remedies are contractually based then only the Court of Federal Claims does." *Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*, 137 F.4th 932, 938 (9th Cir. 2025) (citation omitted). Defendants mischaracterize the underlying rights and remedies sought as ordering NIH "to pay money to plaintiffs (or their members) based upon the government's alleged contractual obligation under certain research grants." Mot. at 1. This is incorrect for multiple reasons.

As for relief, here, as in *Bowen* (and unlike *California*), Plaintiffs challenged a policy—the Directives—to, among other things, avoid more terminations and resulting harm "in the future." *See* APHA App. 1016-17(discussing "ongoing harm" from the Directives).  The heart of the Judgment, which set-aside the Directives, is an assurance that research topics are not arbitrarily and prospectively banned. App. 349-50. This central relief Plaintiffs sought and received could not be issued by the CFC. *See, e.g.*, *Ferreiro v. United* States, 501 F.3d 1349, 1353 n.3 (Fed. Cir. 2007) ("An order compelling the government to follow its regulations is equitable in nature and is beyond the jurisdiction of the [CFC]."); *see also* Mot. at 11-12 (acknowledging CFC lacks the power generally to enter equitable relief). Put simply, the CFC is not the appropriate venue to hear a case concerning whether NIH acted arbitrarily and capriciously when instructing staff members to terminate research

10

they deem "DEI-related" (or otherwise verboten). Such inquiries are squarely within the province of the district courts. *See Califano v. Sanders*, 430 U.S. 99, 105-07 (1977).[2]

As to the source of Plaintiffs' rights, Defendants erroneously suggest they lay in "the grant agreements, which are effectively contracts." Mot. at 13. But Plaintiffs are not seeking to vindicate any specific right under any specific grant agreement. They are challenging the legal authority of Defendants to implement, without adequate reason or explanation and contrary to regulation and statute, a policy of cancelling all grants deemed to, on cursory review, fall into a forbidden category. As one court in this Circuit recently explained, where, as here, plaintiffs challenge an agency action implementing a categorical policy, as opposed to specific payments they claim to be entitled to from specific grant terminations, the challenges are grounded in whether the "Defendants exceeded the bounds of their *statutory ... authority*." *Rhode Island v. Trump,* No. 25-CV-128, 2025 WL 1303868, at *6-7 (D. R.I. May 6, 2025) (emphasis in original).

---

[2] What is more, Defendants' contention that Plaintiffs' harms arise "solely from the Government's failure to pay" (Mot. at 14) is factually and legally wrong. Unrebutted evidence shows far-ranging harms to public health and to researchers' careers that cannot be papered over with money; researchers and their work have been and will continue to be irreparably harmed by losing prestigious NIH funding, which has impacts to career trajectory, reputation, and the status of their ongoing research. *See* APHA App. 949-953, 1016-1017.

Furthermore, even if Plaintiffs *were* seeking to vindicate rights under grant agreements, the Tucker Act would *still* not bar the court's jurisdiction. Plaintiffs have consistently argued that grants are not contracts. *See, e.g.*, APHA App. 930, 969-70. And while Defendants now assert "the grant agreements…are essentially contracts[,]" Mot. at 13, this contention is belied by Congressional authority differentiating between Defendants' legal right to make grants and contracts. *See, e.g.*, 42 U.S.C. §§ 241(a)(3); 241(a)(7) (separately listing the Secretary's authority to "make grants-in-aid to universities, hospitals, laboratories, and other public or private institutions" from the authority to "enter into contracts"); 42 U.S.C. § 288(b)(2) (differentiating between IC Directors' authority to enter into grants versus contracts); 42 U.S.C. § 289a(a) (distinguishing between "applications made for grants and cooperative agreements" and "applications made for biomedical and behavioral research and development contracts").

It is also contrary to the explicit representations of Defendants in both their regulations and public-facing materials, each of which makes clear that Defendants view grants as *distinct from* contracts. *See* APHA App. 990-997 (NIH webpage distinguishing "grants" and "contracts"); 45 C.F.R. § 75.2 (HHS regulations demonstrating that a "grant agreement" is an instrument, distinct from a contract, designed to "carry out a public purpose authorized by a law of the United States … and not to acquire property or services for the Federal awarding agency[.]").

12

Each of the distinctions above are more than sufficient to warrant denial of Defendants' Motion. However, Defendants' own contradictory arguments provide an additional basis. Defendants simultaneously argued in the District Court that Plaintiffs lack standing to challenge the Directives and resulting terminations because they are not parties to any NIH grant agreements, *see* APHA App. 1054-55, while arguing here that this case should have been consigned to the CFC. But according to the Federal Circuit, "[t]o maintain a cause of action pursuant to the Tucker Act that is based on a contract, the contract must be between the plaintiff and the government ...." *Cienega Gardens v. United* States, 194 F.3d 1231, 1239 (Fed. Cir. 1998) (*quoting Ransom v. United States,* 900 F.2d 242, 244 (Fed. Cir. 1990)). And the D.C. Circuit has "categorically reject[ed] the suggestion that a federal district court can be deprived of jurisdiction by the Tucker Act when no jurisdiction lies in the [CFC]." *Tootle v. Sec'y of Navy*, 446 F.3d 167, 176–77 (D.C. Cir. 2006).

The Ninth Circuit recently rejected a similar Tucker Act argument for precisely this reason. In *Community Legal Services in E. Palo Alto v. United States Dep't of Health & Human Services*, 137 F.4th 932 (9th Cir. 2025), legal services subcontractors challenged HHS's termination of funding for unaccompanied children in immigration proceedings. The Government argued that subcontractors did not have standing to sue the United States in the CFC, but nonetheless claimed the Tucker Act "impliedly forbids" those plaintiffs' APA claims because

"subcontractors have *fewer* legal rights than prime contractors." *Id.* at 939. In rejecting this argument, the court noted "the result requested by the Government would mean that no court has jurisdiction to hear plaintiffs' claims. Not only is this result contrary to common sense, but it also conflicts with the 'strong presumption favoring judicial review of administrative action' that is embodied in the APA." *Id.* at 939.

### B.     The Directives and resulting grant terminations are not committed to agency discretion.

Defendants are also unlikely to prevail on their mistaken contention that the Directives and terminations are committed to agency discretion. Consistent with the "strong presumption of judicial review under the APA," *Marasco & Nesselbush, LLP v. Collins*, 6 F.4th 150, 170 (1st Cir. 2021) (quotation omitted), the Supreme Court has "read the § 701(a)(2) exception" for agency discretion "quite narrowly, restricting it to those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," *Dep't of Commerce v. New York*, 588 U.S. 752, 772 (2019) (quotation omitted).

To determine whether there are such meaningful standards, this Court looks at "regulatory and statutory limits on [an agency's] discretion." *California v. U.S. Dep't of Educ.*, 132 F.4th 92, 98 (1st Cir. 2025). "Federal action is nearly always reviewable for conformity with statutory obligations[.]" *Union of Concerned*

*Scientists v. Wheeler*, 954 F.3d 11, 17 (1st Cir. 2020) (quotation omitted) ("*Union*").

And "[t]he fact that the statute leaves a great deal of discretion to the agency" does

not "make actions taken pursuant to it unreviewable." *Id.* at 18–19; *Dep't of*

*Commerce*, 588 U.S. at 771-72 ("To be sure, the Act confers broad authority on the

Secretary … But [it does] not leave his discretion unbounded.").

This Court's analysis in *California*—left undisturbed by the Supreme Court's

stay—is instructive. This Court noted the "statutory mandates" regarding the grants

at issue and emphasized that "applicable regulations cabin [the agency's] discretion

as to when it can terminate grants." *California v. U.S. Dep't of Educ.*, 132 F.4th 92,

98 (1st Cir. 2025) (citation omitted). These limits provided "meaningful standard[s]

by which to judge the [agency's] action." *Id.* (quotation omitted).

Here, statutes and regulations provide similar "judicially manageable

standards" for reviewability. *Union*, 954 F.3d at 21 (quotation omitted). For

example, Defendants are subject to statutory mandates to diversify the workforce.

*See, e.g.*, 42 U.S.C. §§ 282(h) (HHS Secretary, through NIH Director, "shall, in

conducting and supporting programs for research, research training, recruitment, and

other activities, provide for an increase in the number of women and individuals

from disadvantaged backgrounds (including racial and ethnic minorities) in the

fields of biomedical and behavior research."); 285t-1(a), (b); 288(a)(4). Statute also

mandates NIH to fund research into health disparities, *see, e.g.*, 42 U.S.C § 283p,

including by requiring certain ICs to "give priority to conducting and supporting minority health disparities research," *see, e.g.*, 42 U.S.C §§ 285t(b). And the applicable regulation imposes limits on when and how the agency may unilaterally terminate funding. *See* 45 C.F.R. § 75.372(a) (2024); *Policy & Research, LLC v. United States Dep't of Health & Human Services*, 313 F. Supp. 3d 62, 76 (D.D.C. 2018). These limits are more than enough to confer reviewability. *See Shawnee Tribe v. Mnuchin*, 984 F.3d 94, 100–01 (D.C. Cir. 2021) (collecting cases)

*Lincoln v. Vigil*—the sole authority on which Defendants rely—does not counsel otherwise. Indeed, *Lincoln* emphasized that "an agency is not free simply to disregard statutory responsibilities" and that "Congress may always circumscribe agency discretion to allocate resources by putting restrictions in the operative statutes." 508 U.S. 182, 193 (1993). Defendants attempt to analogize to the lump-sum appropriation in *Lincoln* by focusing solely on appropriations statutes, but in so doing they overlook the above-mentioned statutory and regulatory framework constraining research funding. Mot. at 17-18. Neither this Court nor the Supreme Court have taken such a cramped approach to reviewability. *See Union*, 954 F.3d at 21. "Because this is not a case in which there is no law to apply," the Directives and terminations are "subject to judicial review." *See Dep't of Comm.*, 588 U.S. at 773.

**C.    The Directives and resulting grant terminations were neither reasonable nor reasonably explained.**

Defendants' final argument that their actions were well reasoned is without merit and requires little response. The Directives and resulting terminations are arbitrary and capricious in violation of the APA, and Defendants are unlikely to prove otherwise.

An agency action is arbitrary and capricious "if it is not reasonable and reasonably explained." *Ohio v. EPA*, 603 U.S. 279, 292 (2024) (quotation omitted). An agency must "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choices made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (cleaned up).

After a careful review of the administrative record, the District Court found that the Directives were "breathtakingly arbitrary and capricious," App. 501, for several reasons: (i) the Directives rely on terms with no operative definitions, which essentially "allows the [agency] to arrive at whatever conclusion it wishes without adequately explaining the standard on which its decision is based," App. 501-10; (ii) there is "not a shred of evidence … in the record" demonstrating that Defendants undertook *any* analysis—much less a reasoned analysis—to otherwise support the conclusory policy goals set forth in the Directives, *id.*; (iii) Defendants failed to explain reversal of prior agency decision making, App. 510; and (iv) Defendants

17

largely failed to consider "the reliance interests that naturally inure to NIH grant process," App. 510-11.

Without evidence, Defendants baldly assert that NIH conducted an "individualized review" of grants selected for termination. Mot. at 19-20. But that cannot be reconciled with the Court's extensive factual findings based on the administrative record, which demonstrates that not only was there no individualized review, App. 449-91, 501-11, but that NIH implemented the Directives with lightning speed, often spending mere minutes on terminating grants. *See, e.g.*, APHA App. 1110 (official spent 2 minutes reviewing a list of "several additional grants" before directing termination); APHA App. 1111.

Further, Defendants omit a central finding of the District Court: there is "not a shred of evidence" in the record supporting Defendants' "explanation" that the terminated grants are "antithetical to the scientific inquiry, do nothing to expand our knowledge of living systems, provide low returns on investment, and ultimately do not enhance health, lengthen life, or reduce illness." App. 508. That "several dozen grants researching minority health related topics" escaped termination does not change that absence of evidence or prove that any individualized review occurred, as Defendants argue (Mot. at 19)—rather, at most, it reflects the "lack of clarity" inherent in the Directives and resulting haphazard implementation. *See* App. 503-04.

II.    **THE BALANCE OF EQUITIES DOES NOT SUPPORT A STAY OF THE JUDGMENT.**

Defendants fail to establish that the balance of equities entitles them to a stay. *See Somerville Pub. Sch. v. McMahon*, 139 F.4th 63, 74–75 (1st Cir. 2025) ("*Somerville*").

First, with respect to any harm to Defendants, they assert that the Judgment will cause irreparable harm to the "President's ability to execute core Executive Branch policies and to the public fisc." Mot. at 20. But Defendants cite no evidence, nor even identify what these core "policies" are. To the extent Defendants are referring to the Directives, they cannot suffer harm from an order preventing them from enforcing unlawful action. *See Somerville*, 139 F.4th at 74–75.

As to the public fisc, Defendants' heavy reliance on *California*, 145 S. Ct. at 969, is misplaced. There, the Supreme Court relied on a declaration from a government official describing the difficulties inherent in recovering disbursed funds under the specific grants at issue in that case. *See* 145 S. Ct. at 969. No such evidence has been presented here. And while Defendants highlight the lack of bond, that is of course appropriate given the final judgment. Absent any fact-based showing from Defendants, their claim falls well short of their burden to show they "will be irreparably injured absent a stay." *Nken*, 566 U.S. at 434.

Even "if it were to turn out that [Defendants] were erroneously required" to reinstate grants, and that injury was "irreparable to the extent that [Defendants]

19

would not be able to recoup those expenditures," the Court must also consider "the other side of the ledger," in balancing the equities. *Somerville*, 139 F.4th at 75. And as the District Court found, "[a] stay would cause irreparable harm to the plaintiffs." App. 363.

Defendants fail to address the extensive evidence of the potential harm to Plaintiffs of a stay, or point to any evidence that a stay would *not* cause Plaintiffs irreparable harm. Nor could they. Some Plaintiffs and Members have already paused their studies, jeopardizing and, in some cases, eliminating, the ability to perform statistical analyses on any data collected.[3] Many Plaintiffs and Members need their grants to continue their projects.[4] And although many are trying to secure replacement funding, most have been unable to do so or have not raised nearly enough additional funds to allow their projects to continue unless the unlawful Directives are set aside and their implementation is unwound This case is therefore distinguishable from *California*, where plaintiff-respondents "represented in th[e] litigation that they have the financial wherewithal to keep their programs running." 145 S. Ct. at 969; *see also Somerville*, 139 F.4th at 75. Here, the "loss [that] is so great as to threaten the existence" of the work of Plaintiffs

---

[3] *See, e.g.*, APHA App. 17-18, 108, 111, 112, 555, 684, 729, 785.
[4] *See, e.g.*, APHA App. 18, 108, 111, 112, 232, 784.

and Members, is "irreparable." *Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 485 (1st Cir. 2009) (internal citations omitted).

Continued delay of the Judgment also poses a risk to Plaintiffs' and Members' career progression.[5] Similar kinds of unquantifiable harm "is often held to be irreparable." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc*., 102 F.3d 12, 20 (1st Cir. 1996). This further distinguishes this case from *California*, which "involved the loss of funds" that could be recovered later, whereas the harms to Plaintiffs "are of a kind that could not be recompensed." *Somerville*, 139 F.4th at 75.

Finally, Defendants give *no* consideration to the public's interest in continuing Plaintiffs' and Members' research, which address urgent public health issues. For example, the NIH has terminated grants funding a "Research Coordinating Center to Reduce Disparities in Multiple Chronic Diseases," as "DEI," research into "Sexual Orientation-Related Disparities in Obstetrical and Perinatal Health," as gender identity, and research on "Teen-Parent Dynamics in Adolescent COVID-19 Vaccine Acceptance and Uptake" as "vaccine hesitancy". APHA App. 1085-1102, 1103-09, 1112-18, 1129-34. Contrary to Defendants' assertion that there would be irreparable harm to the public fisc absent a stay, such a stay would not only waste

---

[5] *See, e.g.*, APHA App. 112-13, 167-69, 322-23, 458-60, 461, 556, 685, 784, 803-04, 849.

taxpayer funds previously spent on research only partially completed, but it would also torpedo that research—leading to delay in scientific innovation.[6]

Defendants argue that a stay is in the public interest because the District Court "exceeded its authority by ordering specific performance," Mot. at 21, but that is an incorrect reading of the Judgment. *See supra* Section I.A.ii. At the same time, Defendants note that it would be appropriate for the District Court to "'make available for obligation the full amount of funds' that would otherwise have been disbursed under the terminated grant awards.'" Mot. at 21 (quoting *AIDS Vaccine Advoc. Coal. v U.S. Dep't of State*, No. 25-cv-402, 2025 WL 752378, at \*23 (D.D.C. Mar. 10, 2025)). That is exactly what the District Court has done here by setting aside the Directives and resulting grant terminations under the APA. Staying such an action is not in the public interest. *See Somerville*, 139 F.4th at 76 ("[T]here is generally no public interest in the perpetuation of unlawful agency action." (internal citations and quotations omitted)).

## CONCLUSION

This Court should deny Defendants' motion for a stay pending appeal. Plaintiffs welcome an expedited appeal briefing schedule.

---

[6] *See, e.g.*, APHA App. 14, 17-18, 111, 232.

Dated: July 8, 2025

*/s/ Jessie J. Rossman*

Jessie J. Rossman (No. 1161236)
Suzanne Schlossberg (No. 1217988)
**American Civil Liberties Union
Foundation of Massachusetts, Inc.**
One Center Plaza, Suite 801
Boston, MA 02018
617-482-3170
jrossman@aclum.org
sschlossberg@aclum.org

Olga Akselrod**
Alexis Agathocleous**
Rachel Meeropol (No. 115840)
Alejandro Ortiz (No. 1190415)
Leah Watson (No. 1213334)
**American Civil Liberties Union
Foundation**
125 Broad Street, 18th Floor
New York, NY 10004
212-549-2659
oakselrod@aclu.org
aagathocleous@aclu.org
rmeeropol@aclu.org
ortiza@aclu.org

Lisa S. Mankofsky (No. 1218420)
Oscar Heanue**
**Center for Science in the Public
Interest**
1250 I St., NW, Suite 500
Washington, DC 20005
202-777-8381
lmankofsky@cspinet.org
oheanue@cspinet.org

Respectfully submitted,

Shalini Goel Agarwal**
shalini.agarwal@protectdemocracy.org
**Protect Democracy Project**
2020 Pennsylvania Ave., NW,
Ste. 163
Washington, DC 20006
202-579-4582
shalini.agarwal@protectdemocracy.org

Michel-Ange Desruisseaux**
82 Nassau Street, #601
New York, NY 10038
michel-ange.desruisseaux@protectdemocracy.org

Kenneth Parreno (No. 1218416)
15 Main Street, Suite 312
Watertown, MA 02472
kenneth.parreno@protectdemocracy.org

Matthew D. Brinckerhoff**
Ilann M. Maazel**
Max Selver**
Sydney Zazzaro**
**Emery Celli Brinckerhoff Abady
Ward & Maazel LLP**
One Rockefeller Plaza, 8th Floor
New York, New York 10020
(212) 763-5000
mbrinckerhoff@ecbawm.com
imaazel@ecbawm.com
mselver@ecbawm.com
szazzaro@ecbawm.com

23

*\*\* Admission forthcoming*

## CERTIFICATE OF COMPLIANCE

This belief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,098 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Times New Roman, 14-point font, a proportionally spaced typeface.

Dated: July 8, 2025                    */s/ Jessie J. Rossman*
                                       Jessie J. Rossman

## CERTIFICATE OF SERVICE

I certify that on July 8, 2025, the foregoing response was filed electronically through the Court's CM/ECF system. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system.

Dated: July 8, 2025                    */s/ Jessie J. Rossman*
                                       Jessie J. Rossman